UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SANJUANA B. BUTLER, ET AL           CIVIL ACTION NO. 12-cv-1838

VERSUS                               JUDGE HICKS

LOUISIANA STATE UNIVERSITY           MAGISTRATE JUDGE HORNSBY
HEALTH SCIENCES CENTER, ET AL

## REPORT AND RECOMMENDATION

**Introduction**

Sanjuana and Jamie Butler ("Plaintiffs") filed suit in state court against Bayer Healthcare Pharmaceuticals, Inc. ("Bayer") and LSU Health Sciences Center ("LSU-HSC"). Sanjuana alleged that she received an IUD manufactured by Bayer, but the IUD did not remain in the proper position, and Sanjuana twice became pregnant and lost a child. Plaintiffs asserted a claim against Bayer under the Louisiana Products Liability Act and against LSU-HSC for violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA").

Bayer removed the case based on an assertion of diversity jurisdiction. It asserted that LSU-HSC's citizenship, which is the same as Plaintiffs, should be ignored because LSU-HSC was improperly joined. Bayer characterized Plaintiffs' claims against the hospital as being simple medical malpractice claims, which are premature until the completion of a pending medical review panel process. Bayer, without explanation, did not invoke federal question jurisdiction based on the EMTALA claim in Plaintiffs' petition.

Bayer, within a week of removing the case, filed a motion to dismiss the claim against it for failure to state a claim on which relief can be granted. Plaintiffs did not file any timely opposition, and Judge Hicks granted Bayer's motion to dismiss.

The day before Judge Hicks issued his ruling, Plaintiffs filed a Motion to Remand (Doc. 8) that is now before the court. The court would ordinarily address a motion to remand or other jurisdictional or forum issue before deciding substantive issues such as Bayer's motion to dismiss. It appears, however, that Judge Hicks' ruling on Bayer's motion to dismiss was already in transit to the Clerk for docketing by the time the motion to remand would have come to the court's attention.

Plaintiffs argue that LSU-HSC was not improperly joined because Plaintiffs allege in their petition that the hospital "failed to timely remove the IUD from Sanjuana Butler because the patient was not able to pay for the procedure," which Plaintiffs assert (1) was an intentional act not covered by the Louisiana Medical Malpractice Act and (2) gives rise to a viable claim under EMTALA.

**Timeliness of the Motion to Remand**

Bayer first argues that the motion to remand is untimely because it was filed more than 30 days after the case was removed. A motion to remand based on a procedural defect must be raised within 30 days, but issues of subject-matter jurisdiction may be raised at any time. 28 U.S.C. § 1447(c). Bayer argues that improper joinder is a procedural defect, but it is mistaken.

If a non-diverse defendant was properly joined, then there is no diversity of citizenship and, therefore, no subject-matter jurisdiction. This was demonstrated in Gasch v. Hartford Acc. & Indem. Co., 491 F.3d 278 (5th Cir. 2007), where the plaintiffs did not file a motion to remand, and the district court granted summary judgment in favor of the defendants. The Fifth Circuit assessed subject-matter jurisdiction *sua sponte* and determined that a non-diverse defendant was not improperly joined, so the federal court did not have subject-matter jurisdiction. Had improper joinder been a mere procedural defect, the court would not have been able to address it absent a timely motion to remand. Plaintiffs' motion in this case goes to subject matter jurisdiction, so it is not barred by the 30-day provision of § 1447(c). The court will now turn to the merits of the motion, which attacks the improper joinder plea.

**Improper Joinder**

　A. Introduction

Bayer, as the party invoking the court's jurisdiction, has the burden of establishing improper joinder. It must show that there is no reasonable basis to predict Plaintiffs might be able to recover against LSU-HSC. Smallwood v. Illinois Central RR. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Bayer has not submitted any evidence in an effort to pierce the pleadings, so the court will conduct a Rule 12(b)(6)-type analysis to determine whether the petition states a claim against LSU-HSC. Id. Any ambiguities in applicable law must be resolved in favor of Plaintiffs. Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004).

Plaintiffs alleged in their petition that, after Sanjuana experienced two lost pregnancies, she "continued to request removal of the IUD by LSUHSC." "However, even though the emergent condition exists for removal of the IUD, LSUHSC refuses to remove the IUD unless the patient pays for the procedure." Petition, ¶ 13. The patient is unable to pay for the procedure. ¶ 14. Plaintiffs also alleged that the hospital ran afoul of EMTALA by not timely removing the IUD. ¶ 32.

**B. EMTALA Claim**

A federal claim on the face of a petition usually generates a notice of removal that invokes federal question jurisdiction. Bayer did not make that invocation. The court must still address the EMTALA claim because the hospital would be properly joined if Plaintiffs have a viable claim against it under the federal statute.

EMTALA, sometimes referred to as the anti-dumping statute, was "passed in 1986 in response to the growing concern that hospitals were dumping patients who could not pay by either turning them away from their emergency rooms or transferring them before their emergency conditions were stabilized." Miller v. Medical Center of S.W. Louisiana, 22 F.3d 626, 628 (5th Cir.1994). The Act provides that if a hospital has an emergency department and an individual "comes to the emergency department" and requests examination or treatment for a medical condition, "the hospital must provide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a). The Fifth Circuit in Miller

took a strict view of the requirement that the patient "comes to the emergency department" before the statute is triggered, but an agency regulation interpreting the statute takes a broader view. 42 C.F.R. § 489.24

An emergency medical condition means one manifested by acute symptoms of sufficient severity that the absence of immediate medical attention could reasonably be expected to result in serious impairment to bodily functions, serious dysfunction of a bodily organ or part, or placing the health of a pregnant woman or her unborn child in serious jeopardy. § 1395dd(e). If the hospital determines the individual has an emergency medical condition, the hospital must provide such further medical examination and such treatment as may be required to stabilize the medical condition or to allow transfer of the individual to another facility. § 1395dd(b). To stabilize means to provide such medical treatment as may be necessary to assure, with reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from the facility or, with respect to a pregnant woman who is having contractions, to deliver. § 1395dd(e)(3)(A).

Plaintiff alleges that she went to LSU-HSC on March 24, 2011 and was referred to its high-risk pregnancy clinic. She alleges that she lost the baby and, more than a month later, on April 26, 2011, underwent a D&C, during which the IUD was not removed. She alleges another failed pregnancy that she blames on the IUD, but she provides no specific facts surrounding any treatment at LSU-HSC with respect to this second pregnancy.

These allegations do not give rise to a claim under EMTALA. They depict a patient who was treated over a course of weeks, not an emergency room situation where the hospital failed to provide appropriate screening or stabilization before the patient was transferred or discharged. The facts alleged in the petition are scant with respect to the hospital care, and the few that are there simply do not present facts that give rise to a viable claim under EMTALA. They suggest that Sanjuana believes the IUD must be removed to avoid problems if she again gets pregnant, but they do not depict the hospital dumping her during an emergency-room type situation.

### C. Medical Malpractice

Plaintiffs acknowledge that any claim against LSU-HSC for medical malpractice in Louisiana law is premature until the administrative requirements of state law have been exhausted. They admit that such an administrative proceeding has been commenced. They argue that their claims against the hospital in this suit may nonetheless continue because their petition alleges intentional acts that fall outside the state medical malpractice laws.

Louisiana law is that "malpractice" subject to the administrative requirements does not include intentional torts, but "examination of the nature of the acts must be conducted to determine whether they truly constitute intentional torts as alleged by the plaintiffs." Heacock v. Cook, 60 So. 3d 624, 628 (La. App. 2d Cir. 2010). Plaintiffs characterize as intentional the hospital's refusal to remove the IUD unless Plaintiffs pay for the procedure. That decision was likely intended, as are many other decisions made by healthcare providers that fall easily within the scope of a medical malpractice claim. Patients often request a particular course

of treatment, and physicians decide not to provide it. That decision was quite intentional, but if the patient complains that it resulted in medical harm, the claim is plainly within the scope of medical malpractice laws and not akin to an intentional tort such as assault or battery.

Plaintiffs' claims are related to the medical treatment afforded the patient, require expert medical opinion to determine whether the standard of care was breached, and arose from the course of treatment in the context of a physician-patient relationship. These factors, under the standards discussed in Coleman v. Deno, 813 So. 2d 303 (La. 2002), point toward malpractice rather than intentional tort. The claims in the petition fall within the scope of the medical malpractice laws and make any claim against LSU-HSC premature until the administrative process has been completed.

Magistrate Judge Payne wrote in Johnson v. Sci-Med, 92 F.Supp. 2d 587 (W.D. La. 2000) that such premature claims are not necessarily improperly joined. Later, in Melder v. Allstate Corp., 404 F.3d 328, 332 (5th Cir. 2005), the Fifth Circuit concluded that the Louisiana Insurance Rating Commission, the sole non-diverse defendant, was improperly joined because administrative remedies had not been exhausted prior to suit as required by the Louisiana Insurance Code. And in Holder v. Abbott Labs., Inc., 444 F.3d 383 (5th Cir.2006) the Court held that remand to state court was not warranted where the plaintiffs did not comply with the exhaustion requirements of the Vaccine Act prior to filing suit. These cases indicate that the Fifth Circuit is of the view that a non-diverse defendant is improperly joined if a plaintiff's claim is subject to a prematurity defense for lack of administrative exhaustion at the time of removal. See Fontenot v. Johnson & Johnson, 2010 WL 2541187

(W.D. La. 2010), adopted, 2010 WL 2541178 (W.D. La. 2010); and Senia v. Pfizer, Inc., 2006 WL 1560747 (E.D. La. 2006). The undersigned will follow that indication and recommend that the court find LSU-HSC was improperly joined because the malpractice claim against it was not administratively exhausted at the time of removal.

**Conclusion**

Bayer has met its burden of establishing that LSU-HSC was improperly joined, so Plaintiffs' Motion to Remand (Doc. 8) should be denied. A finding of improper joinder is tantamount to dismissal of the defendant who was improperly joined. See Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 102 (5th Cir. 1990). It is, therefore, recommended that the court *sua sponte* dismiss all claims against LSU-HSC, without prejudice to their reassertion in a proper forum once administrative exhaustion is completed. Plaintiffs' earlier opportunity to brief the improper joinder issue and the current opportunity to file objections to this report and recommendation satisfy any notice requirements of the rules and due process. See Magouirk v. Phillips, 144 F.3d 348, 359 (5th Cir. 1998).

The only other defendants named are ABC Insurance Co. and Berlex Laboratories. There is no outstanding motion to dismiss either defendant, but a district court may dismiss a claim on its own motion under Rule 12(b)(6) as long as the procedure employed is fair. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998). This procedure is fair, because this Report and Recommendation provides Plaintiffs with sufficient notice of and opportunity to respond to the possible dismissal of the claims against these final two defendants.

The petition describes ABC as an insurance company believed to have insured Bayer. All claims against Bayer were dismissed earlier, so dismissal of this insurer is also appropriate. As for Berlex, footnote one of Bayer's memorandum in support of motion to dismiss represents that Berlex was integrated into Bayer in 2006 so (1) is not a proper defendant and (2) entitled to the benefit of any ruling that dismisses Bayer. Plaintiffs have offered noting to contest that assertion, and it has been found that Plaintiffs have no claim against Bayer, so it is recommended that all claims against Berlex also be dismissed. That will resolve all claims against all parties and warrant the entry of final judgment in this case.

Accordingly,

**IT IS RECOMMENDED** that Plaintiffs' Motion to Remand (Doc. 8) be denied. It is further recommended that all claims against LSU Health Sciences Center be dismissed without prejudice and that all claims against ABC Insurance Co. and Berlex Laboratories be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of November, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE